UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA NUESTRO LAUSER,<br><br>    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 13-cv-05990-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 22 |

## I. INTRODUCTION

Plaintiff Roberta Nuestro Lauser ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 21, 22. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' papers, the Administrative Record ("AR") in this case, and relevant legal authority, the Court hereby REMANDS this case for the reasons discussed below.

## II. BACKGROUND

Plaintiff was born in 1963. AR 148, 155. She completed one year of college, and a course in medical assistance. AR 58-59. She worked as a chef/caterer from 1982 to 1998, as a hospital food service aide from 1997 to 1998, as an office manager from 1998 to 1999, and an accountant from 1999 to 2003. AR 183, 199.

On November 24, 2003, A. Shabi Khan, M.D., examined Plaintiff for complaints related to carpal tunnel syndrome. AR 267-68. Dr. Khan's examination revealed bilaterally positive Phalen and Tinel signs at the wrist, negative signs at the elbow, and no atrophy in her left wrist. AR 267.

1   Dr. Khan found full range of motion and no tenderness along forearm palpitation.  AR 267.  Dr.

2   Khan diagnosed "carpal tunnel disease that is longstanding in nature," but found that Plaintiff was

3   not advanced enough to have obvious atrophy of her thenar musculature.  AR 267.  Dr. Khan

4   recommended bilateral nerve conduction studies and EMGs.  AR 267.

5        Dr. Khan saw Plaintiff again on December 12, 2003, after she had undergone an

6   electroconduction study.  AR 266.  Plaintiff had undergone EMG and nerve conduction studies of

7   both of her upper extremities, which were consistent with bilateral carpal tunnel syndrome and

8   mild right C7 radiculopathy.  AR 253-55.  Dr. Khan noted that her symptoms were essentially

9   unchanged and spoke with Plaintiff about the possibility of going forward with a carpal tunnel

10  release surgery.  AR 266.  After a follow up visit on January 8, 2004, Dr. Khan noted that Plaintiff

11  planned to go forward with the procedure that summer.  AR 265.

12       A medical record from Seton Medical Center indicates that Plaintiff was seen for

13  numbness and shooting pain in her hands on December 31, 2003.  AR 262.  The treatment plan

14  indicates therapeutic exercise, soft tissue mobilization, stretching, and the use of heat.  AR 262.

15       Plaintiff began physical therapy in January 2004.  AR 256-61.  The therapist found that

16  Plaintiff presented with "significant functional limitations and a decreased quality of life," but that

17  her "[o]verall rehabilitation potential is good," finding she would benefit from "modalities for

18  pain, therapeutic exercise and a functional train[in]g program for long term symptom relief."  AR

19  257.  In a progress report dated January 7, 2004, the therapist noted that, after two treatments,

20  Plaintiff had established goals of increased grip strength, decreased pain, improved sensation, and

21  decreased hypersensitivity.  AR 263.

22       Medical records from Kaiser Permanente beginning in March 2004 show that Plaintiff

23  presented with complaints of pain in both hands.  AR 292.  She reported that she dropped things

24  and could not sleep through the night.  AR 292.  Plaintiff underwent carpal tunnel release surgery

25  on her right hand in July 2004 and on her left hand in January 2005.  AR 281.

26       On October 28, 2004, Plaintiff was seen for pain in her shoulder, which worsened with

27  lifting.  AR 308.  The examiner diagnosed right shoulder impingement syndrome and

recommended heat and stretching exercises. AR 309.

In February 2005, Plaintiff was again referred to physical therapy for treatment of her pain. AR 283-91. Plaintiff completed a Patient Questionnaire in which she reported hobbies including jogging, dancing, and cooking. AR 283. She indicated that she had constant pain, and she felt tired and could not get up in the morning. AR 283-84.

On March 16, 2005, Jie Ni, M.D., examined Plaintiff for complaints of constant shoulder and neck pain. AR 313. Dr. Ni assessed cervical radiculopathy and possible shoulder impingement syndrome. AR 313-14. An x-ray of the cervical spine revealed mild scoliosis, with minor degenerative changes identified at the C4-5 level. AR 273-74. The impression was spondylosis. AR 274. Dr. Ni prescribed stretching exercises and recommended an MRI if it did not help with the pain. AR 314. Dr. Ni saw Plaintiff again on April 20, 2005, for complaints of constant right upper back and shoulder pain. AR 315-16. Dr. Ni ordered an MRI to assess Plaintiff's position and recommended she continue with physical therapy and stretching exercises. AR 316. On May 20, 2005, Dr. Ni examined Plaintiff for pain over her body, neck, upper and lower back, and right knee. AR 317-18. Dr. Ni assessed chronic pain syndrome and questioned whether Plaintiff had fibromyalgia. AR 318. He referred her to a rheumatologist for treatment recommendations. AR 318.

In May 2005, Ms. Lauser saw Nina Schwartz, M.D., for a rheumatology consultation. AR 277-79. Dr. Schwartz noted that Plaintiff had musculoskeletal pains since 1996, which had worsened over the past four years, with chronic and fairly constant headaches and poor sleeping patterns. AR 277. Examination revealed several tender points and significant limitation of motion in her cervical spine and right shoulder. AR 278. Dr. Schwartz assessed chronic musculoskeletal pain with several features of fibromyalgia, including tender points, chronic headaches, and poor sleep. AR 279. Dr. Schwartz referred Plaintiff to the chronic pain clinic for further evaluation and treatment. AR 279.

In November 2005, Ms. Lauser saw Caroline Capitano, D.O., for a pain consultation. AR 280-82. Dr. Capitano noted that Plaintiff had multiple areas of pain for many years duration. AR

3

1   280. She assessed Plaintiff as having myofascial pain syndrome,[1] but that Plaintiff did not meet
2   the criteria for fibromyalgia. AR 282. She referred Plaintiff "to San Francisco for orientation for
3   the level 2 program," noting that she thought Plaintiff "would benefit significantly from the
4   program there." AR 282.

5   On September 25, 2010, Jonathan Schwartz, M.D., completed a comprehensive internal
6   medicine evaluation. AR 389-95. Dr. Schwartz diagnosed body aches, secondary to myofascial
7   pain syndrome, and residual carpal tunnel syndrome. AR 394. He also noted some mild
8   decreased range of motion and strength on examination. AR 394. Dr. Schwartz opined that
9   Plaintiff had no limits on the ability to sit, stand, and/or walk; could lift and/or carry 20 pounds
10  occasionally and 10 pounds frequently; and could do frequent reaching. AR 394-95.

11  Plaintiff first saw Brittany Goss, D.O., on February 22, 2011 for a fibromyalgia
12  consultation. AR 460-61. Plaintiff reported that her symptoms began in 1999, but became
13  continuous and worsened over the past three years. AR 461. Plaintiff complained of pain in her
14  neck and back that radiated down to her toes and heels, and she reported sleep disturbances,
15  fatigue, and migraines. AR 461. Dr. Goss assessed fibromyalgia syndrome. AR 460. Plaintiff
16  continued to see Dr. Goss for treatment of her fibromyalgia. AR 432-39, 441-59, 564-68. In June
17  2012, Dr. Goss completed a Medical Source Statement of Ability to Do Work-Related Activities.
18  AR 569-72. Dr. Goss stated the following: Ms. Lauser could lift and/or carry 10 pounds
19  occasionally and less than 10 pounds frequently. AR 569. She could stand and/or walk at least 2
20  hours in an 8-hour workday. AR 569. She could sit for less than 6 hours in an 8-hour workday.
21  AR 570. She is limited in her ability to engage in reaching in all directions, in handling (gross
22  manipulation), and in fingering (fine manipulation). AR 571.

---

[1] Myofascial pain syndrome is classified in the Merck Manual under "Fibromyalgia" as one of "[a] group of common nonarticular disorders characterized by achy pain, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissue structures." *Beauclair v. Barnhart*, 453 F. Supp. 2d 1259, 1276 (D. Kan. 2006) (citing The Merck Manual of Diagnosis and Therapy (Mark H. Beers, M.D. & Robert Berkow, M.D. eds., 17th ed. 1999); *see also Alexander v. Barnhart*, 287 F. Supp. 2d 944, 965 (E.D. Wis. 2003) (noting myofascial pain syndrome is a condition very similar to fibromyalgia).

4

### III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On May 3, 2010, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. AR 12, 148-54. She also filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act on that same date. AR 12, 155-62. In both applications, Plaintiff alleged disability beginning June 1, 2004, from a combination of impairments including: bilateral carpal tunnel syndrome, fibromyalgia, migraines, asthma, and osteopenia. AR 12, 148, 155, 181. Plaintiff's applications were denied initially and upon reconsideration. AR 91-96, 105-110.

On August 5, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 111-12. ALJ K. Kwon conducted a hearing on June 13, 2012. AR 26-83. Plaintiff testified in person at the hearing and was represented by Gioconda Egan, a non-attorney representative. The ALJ also heard testimony via telephone from Vocational Expert Scott Simon.

**A.     Plaintiff's Testimony**

At the hearing, Plaintiff testified that pain and exhaustion keep her from working, and there are times when she just cannot get up. AR 39. She has pain in her neck, shoulder, and both arms and hands, and she has muscle twitches all over her body, especially in her feet, calves, and hands. AR 39.

Plaintiff had carpal tunnel release surgeries in 2003 and 2004. AR 40. Although she experienced some improvement in pain levels, she kept going back to the doctor because she started experiencing pain in her back, shoulder, and hands a few months after the surgeries. AR 40-41. She experiences problems with her hands and arms when reaching, problems grasping objects, and she drops things. AR 47-48. She experiences pain while dressing and grooming. AR 49. She has migraine headaches 2 to 3 times a week, which can last up to 24 hours. AR 66-67. She sleeps only 2 to 3 hours a night. AR 69.

When questioned about chores, Plaintiff stated she cooks simple meals like boiled hot dogs or ready-made frozen meals. AR 55. She does the dishes in the morning because she gets too exhausted when she tries to wash them at night. AR 55. She drives pretty much every day,

including taking her kids to school and picking them up, and taking the kids to see their father, who lives an hour away. AR 51. She also goes grocery shopping two or three times a month. AR 55. Her daughter and her daughter's boyfriend also help with the grocery shopping and pick up heavy items. AR 55.

Plaintiff testified that the most she can lift and carry is 10 pounds. AR 52. She cannot sit for longer than 30 minutes because it hurts her back. AR 52. She cannot stand for longer than 30 minutes because she has pain in her feet, toes, and heels from the fibromyalgia. AR 53. She cannot walk longer than 10 to 15 minutes. AR 53. Since 2007, she has been lying down for an hour or more twice in the morning and again in the afternoon. AR 56.

Plaintiff attended a rehabilitation course in medical assistance in 2006 and 2007 as part of the general assistance program. AR 36-37. When she was attending the course, the teacher gave her a warning because she was calling in sick and not showing up on time. AR 57. The course was supposed to take only 9 to 10 months, but it took her 14 months to complete. AR 59. She was absent from school about 5 times a month, she was late for school about 10 times a month, and she left school early about 12 to 15 times a month. AR 60. She was in so much pain that she could not sit down or concentrate. AR 60. The teacher gave her extra time to complete the classes. AR 60.

As far back as 2004, Plaintiff had only two good days a month. AR 61. She had a friend come over to help her with her children, cook, clean, and do the laundry. AR 61.

Plaintiff volunteered at Kaiser from 2007 to 2009, for about 18 months. AR 64-65. The commitment was Monday to Friday, 8:00 a.m. to 2:00 p.m., but the position was not demanding, so Plaintiff had a lot of down time where she could sit down, walk around, or just relax. AR 65-66. Her tasks included bringing magazines to patients, talking to patients, and making coffee. AR 66. On average, she worked four days a week. AR 71.

**B.    Vocational Expert's Testimony**

At the hearing, the ALJ presented the vocational expert with three hypotheticals. AR 74-77. In the first hypothetical, the ALJ asked the expert to assume an individual

6

with the Claimant's age, education, and background. This individual is restricted to light work, so lifting and carrying a maximum of 20 pounds. This individual is restricted to occasionally performing some posturals such as climbing ramps or stairs, balancing, stooping and kneeling and crouching, but never climbing any ladders, ropes, or scaffolds, never crawling, never performing any work overhead or with hazardous machinery, and no overhead reaching.

AR 74. The vocational expert determined that this individual could perform Plaintiff's past relevant work as an accounting clerk and office manager, but not the caterer or food service positions. AR 75. The expert testified that if frequent handling was added, the individual could still perform the accounting clerk and office manager jobs. AR 75.

In the second hypothetical, the ALJ reduced the exertional level from light to sedentary, but kept all other aspects the same, including frequent handling. AR 75. The vocational expert testified that the individual could still work as an accounting clerk and office manager. AR 75.

In the third, the ALJ restricted both previous hypotheticals to an SVP of 2,[2] which ruled out past relevant work. AR 76. The vocational expert testified that the individual could still perform in assembly worker and ticket seller positions. AR 76-77. However, if further limited to occasional handling, there would be no jobs available. AR 77.

**C.  The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[3] 20 C.F.R. § 404.1520(a). The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential

---

[2] "The [Dictionary of Occupational Titles] lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." S.S.R. 00-4P. In other words, a higher SVP time corresponds to higher level positions that require increased training time.

[3] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

7

inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

In this case, the ALJ determined that Plaintiff was not disabled prior to February 22, 2011, but became disabled on that date. AR 12. In analyzing the five steps, the ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since the alleged onset date, June 1, 2004. AR 14.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia and carpal tunnel syndrome. AR 14.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpart. P, Appendix. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 15.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the

8

claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that prior to February 22, 2011, the date she became disabled, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b)[4] and 416.967(b), but provided the following limitations: "occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, and crouching; no climbing of ladders, ropes or scaffolds; no crawling; and no overhead reaching." AR 15. Beginning on February 22, 2011, the ALJ determined that Plaintiff could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a)[5] and 416.967(a), with the following limitations: "occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, and crouching; no climbing of ladders, ropes or scaffolds; no crawling; no overhead reaching; and occasional handling." AR 17.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. § 404.1520(a)(iv)(4), (f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Plaintiff could perform past relevant work as an accounting clerk and office manager prior to February 22, 2011. AR 19. As of that date, however, her RFC prevented her from being able to perform past relevant work. AR 20.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 20.

### D.  ALJ's Decision and Plaintiff's Appeal

On July 25, 2012, the ALJ issued a decision finding that Plaintiff's earnings record shows that she acquired sufficient quarters of coverage to remain insured through September 30, 2008. AR 12-21. However, the ALJ found that she was not disabled through that date. AR 21. The ALJ did find that Plaintiff was disabled beginning February 22, 2011. AR 21. This decision became final when the Appeals Council declined to review it on October 29, 2013. AR 1-3. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On June 10, 2014, Plaintiff filed the present Motion for Summary Judgment. Dkt. No. 21. On June 23, 2014, the Commissioner filed a Cross-Motion for Summary Judgment. Dkt. No. 22.

## IV.  LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064. 1066 (9th Cir. 1997), *Flaten v. Sec'y of Health &*

*Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## V. DISCUSSION

In her Motion, Plaintiff argues that the ALJ's finding that Plaintiff was not disabled prior to February 22, 2011 is based on legal error because she inferred the disability date without the assistance of a medical advisor. Pl.'s Mot. at 12. She also argues the ALJ's finding that her testimony prior to February 22, 2011 was not credible is based on legal error because the ALJ did not provide a clear and convincing reason for her decision. *Id.* at 15.

In response, the Commissioner argues that the ALJ is only required to obtain the testimony of a medical expert when the disability onset date is unclear, which is inapplicable here since there is no ambiguity in the medical evidence. Def.'s Mot. at 3. As to the ALJ's credibility finding, the Commissioner argues that it is entitled to deference because it is supported by substantial evidence and "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [subjective symptoms]." *Id.* at 5 (alteration in original) (quoting *Bunnell v.*

11

1  *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

2  Because it finds remand appropriate on the issue of Plaintiff's disability onset date, the
3  Court turns to it first.

4  Plaintiff first argues that the ALJ erred by finding a later disability onset date without the
5  testimony of a medical expert as required under Social Security Ruling ("SSR") 83-20. Pl.'s Mot.
6  at 12. The "onset date" is the point at which Plaintiff's impairments became so severe as to be
7  "disabling" within the meaning of the Act. *See* 42 U.S.C. § 1382c(a)(3)(A) (defining "disabled").
8  Where the claimant challenges the ALJ's onset date determination, as here, the claimant bears the
9  burden of proof. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998).

10  SSR 83-20[6] provides guidance regarding the onset of disability. For onset in disabilities of
11  a non-traumatic origin, medical records containing descriptions of examinations or treatment of
12  the individual are basic to the determination of the onset of disability and serve as the primary
13  element in onset determination. SSR 83-20.

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

19  *Id.*

20  SSR 83-20 controls how the Commissioner establishes a disability onset date: "How long
21  the disease may be determined to have existed at a disabling level of severity depends on an
22  informed judgment of the facts in the particular case. This judgment, however, must have a
23  legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n. 2 (9th Cir. 1999).

12

services of a medical advisor when onset must be inferred." *Id.*

In *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991), the Ninth Circuit found that "[i]n the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." Accordingly, when the disability onset date is not clear, "*DeLorme* . . . held that in this context 'should' means 'must.'" *Armstrong*, 160 F.3d at 590 (citing *DeLorme*, 924 F.2d at 848). Thus, failure to call on a medical expert to assist in determining the date of onset when onset is not otherwise established clearly in the record is legal error. *Id.* at 589-90; *Quarles v. Barnhart*, 178 F. Supp. 2d 1089, 1096 (N.D. Cal. 2001). "[R]egardless of how careful and well-supported the ALJ's inference may be . . . [w]here the evidence is ambiguous and there are indications that the claimant's . . . condition was disabling prior to the [last date insured], then a medical expert must be called." *Quarles*, 178 F. Supp. 2d at 1096-97; *see also Morgan v. Sullivan*, 945 F.2d 1079, 1082 (9th Cir. 1991) (reversing in part an ALJ's determination of the onset date of mental disorders without the assistance of a medical expert).

Here, the record supports a finding that Plaintiff had impairments that may have been disabling prior to her date last insured of September 30, 2008. The record indicates that Plaintiff suffered from fibromyalgia, carpal tunnel syndrome, and myofascial pain syndrome prior to this date. AR 255, 279, 282, 318. Although the ALJ may be correct that the disability onset did not occur until 2011, the record indicates physical impairments prior to the date last insured and it is difficult to determine, based on the record alone, when the physical impairments became disabling. Plaintiff's conditions did not arise overnight and their onset is ambiguous. Thus, because the onset date of Plaintiff's physical impairments is ambiguous, the ALJ was required to call a medical expert before inferring the date. *Nabhani v. Colvin*, 2014 WL 940546, at *9 (N.D. Cal. Mar. 5, 2014) (remanding for reconsideration of the onset date of the plaintiff's physical disability with the assistance of a medical advisor, finding that the plaintiff's conditions, including fibromyalgia, did not "arise overnight"); *Ahner v. Colvin*, 2013 WL 6839494, at *5 (E.D. Cal.

13

Dec. 23, 2013) ("Since a medical expert was not consulted regarding the onset of plaintiff's disability, the court finds remand [for consideration of this issue] appropriate."). Thus, the Court must remand for reconsideration of the onset date of Plaintiff's physical disability with the assistance of a medical advisor.

## VI.  CONCLUSION

For the reasons stated above, the Court finds that the ALJ erred in not calling on a medical advisor to assist with the determination of the onset of Plaintiff's physical impairments.

The Court has discretion to determine whether to reverse or remand a social security case. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Lewin v. Schweiker*, 654 F.2d 631, 635-36 (9th Cir. 1981). "If additional proceedings can remedy defects in the original administrative proceedings," the case should be remanded. *Lewin*, 654 F.2d at 635. Here, remand is warranted because additional proceedings may remedy the defects in the ALJ's analysis. Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment in part, DENIES the Commissioner's Cross-motion for Summary Judgment, and remands for: (1) reconsideration of the onset date of Plaintiff's physical disabilities with the assistance of a medical advisor.

**IT IS SO ORDERED.**

Dated: August 27, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

14